**In the Matter of the PETITION FOR CERTAIN RECORDS OF the McLEOD COUNTY JUVENILE COURT.**

**No. CX–84–1.**

Court of Appeals of Minnesota.

June 12, 1984.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., St. Paul, for appellants.

Gerard W. Snell, John Stuart, Minneapolis, for respondent.

Heard, considered, and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by petitioners McLeod County, McLeod County Sheriff's Office, and the State of Minnesota challenging the order of McLeod County Juvenile Court which denied petitioner's request for release to them of the names and addresses of juveniles who were formerly under the supervision of a probation officer who has allegedly abused a number of his probationers. We reverse.

## FACTS

Edward B. Wey was employed as a probation officer for the McLeod County Probation Office for approximately thirteen years. He terminated that employment in May 1983. In October of 1983, a criminal complaint was filed in McLeod County District Court, charging Edward Wey with four misdemeanor offenses, two counts of misconduct of a public employee, a violation of Minn.Stat. § 609.43(2) (1982), and two counts of procuring liquor for a minor, a violation of Minn.Stat. § 340.79 (1982).

The complaint alleges that Wey engaged in sexual contact and penetration with two juvenile male probationers under the age of sixteen. These juveniles had been subject to Wey's probationary supervision. A juvenile named E.H. alleged that while he was under Wey's supervision from 1978 to 1981, he engaged in oral, anal, and manual sexu-

al contact with Wey. These incidents allegedly usually occurred in Wey's apartment. Wey allegedly provided E.H. with alcoholic beverages, although Wey was aware E.H. had received extensive treatment for alcohol abuse.

The complaint also makes reference to three other juvenile probationers who informed authorities they had personal experiences with Wey where they endured sexually compromising and vulnerable experiences in Wey's home.

Investigators from the McLeod County Sheriff's Office and the State of Minnesota conducted a limited investigation into Wey's activities. These investigators, who are experienced in investigating the sexual abuse of children, concluded that other juvenile probationers under Wey's prior supervision may also have been victimized by his conduct. The sheriff's office and the state engaged in unsuccessful efforts to identify and locate other juveniles who had been under Wey's supervision.

In October of 1983, the State of Minnesota, McLeod County, and the Sheriff of McLeod County petitioned McLeod County Juvenile Court pursuant to Minn.Juv.C.R. 34.02(3)(B), requesting the names and addresses of the juveniles who had been supervised by Wey from October 6, 1980 through May 1983. Appellants' petition stated numerous reasons why the disclosure of the requested names and addresses would be in the best interests of the juveniles, the public safety, and the functioning and integrity of the juvenile court system.

The McLeod County Juvenile Court appointed a special public defender for the purpose of protecting the confidentiality of the juveniles who may be affected by the petition. The public defender opposed the petition. He urged that the release of the juvenile names would be injurious to the juveniles and to the juvenile court.

The McLeod County Juvenile Court had before it in its deliberation only petitioner's petition and memorandum. No testimony was taken. No oral argument was held. Because of the significance of petitioner's request, and because the decision would be partially an administrative one, the petition was considered by the three judges who sit on the juvenile court bench of District 1D. By order of December 19, 1983, the juvenile court denied appellants' petition.

## ISSUES

1. Is a juvenile court order denying a petition for disclosure of names and addresses of juveniles who had been under the supervision of a former juvenile court probation officer an appealable order?

2. Did appellants meet the requirements of Rule 34.02 of the Rules of Procedure for Juvenile Court in requesting that the court release names and addresses of juveniles who have been under the supervision of a former probation officer who is accused of sexually abusing a number of juveniles?

## ANALYSIS

### I.

Respondent asserts that appellants have appealed from a nonappealable order, and this Court is without jurisdiction to review that order. We cannot agree.

Appeals from juvenile court orders are permitted by Minn.Stat. § 260.291 (1982 & Supp.1983), which in part provides:

*Subdivision 1. Persons entitled to appeal; procedure.* An appeal may be taken by the aggrieved person from a final order affecting a substantial right of the aggrieved person

. . . .

*Subd. 2. Appeal.* The appeal from a juvenile court is taken to the court of appeals as in other civil cases.

The state and the county may be considered an "aggrieved person" for purposes of perfecting an appeal under Minn. Stat. § 260.291 (1982 & Supp.1983). *Matter of Welfare of S.V.*, 296 N.W.2d 404, 406 (Minn.1980).

Minn.R.Civ.App.P. 103.03(g) provides:

An appeal may be taken to the Court of Appeals:

. . . .

(g) except as otherwise provided by statute, from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding, provided that the appeal must be taken within the time limited for appeal from an order;

Petitioner's request here was brought pursuant to Rule 34.02. "The state, of course, has a compelling interest in identifying and protecting victims of child abuse." *State v. Odenbrett*, 349 N.W.2d 265, 269 (Minn. 1984). The proceeding before the McLeod County Juvenile Court was a "special proceeding" and resulted in a final order affecting a "substantial right" of the state within 103.03(g).

## II.

■ The legislature has recognized juvenile records may be disclosed pursuant to court order. Minn.Stat. § 260.161(2) (1982); Minn.Stat. § 13.84(5)(e) (1982). The circumstances in which a court may order disclosure of the records is set forth in Minn.Juv. C.R. 34.02(3), which provides:

*Subd. 3.  Court Order Required.*

(A) *Individuals or Agencies.*  The court may order juvenile court records to be made available for inspection, copying, disclosure or release, subject to such conditions as the court may direct, to:

(i) a representative of a state or private agency providing supervision or having custody of the child under order of the court, or

(ii) any individual for whom such record is needed to assist or to supervise the child in fulfilling a court order, or

(iii) any other person having a legitimate interest in the child or in the operation of the court or the child.

(B) *Public.*  A court order is required before any inspection, copying, disclosure or release to the public of the record of a child.  Before any court order is made the court must find that inspection, copying, disclosure or release is:

(i) in the best interests of the child, or

(ii) in the interests of public safety, or

(iii) necessary for the functioning of the juvenile court system, or

(iv) in the interests of the protection of the rights of a victim of a delinquent act.

The record of the child shall not be inspected, copied, disclosed or released to any present or prospective employer of the child or the military services.

The appellants argue their petition for disclosure of the juvenile names and addresses has satisfied the requirements under Rule 34.02(3)(A)(iii) or (3)(B)(i), (ii), and (iii). This court's analysis is limited to whether the petition has satisfied any requirement in Rule 34.02(3)(B). Under 34.-02, subd. (3)(B)(i), (ii), and (iii), a court may release or disclose a juvenile record if there is a showing that the disclosure would be in the best interests of the child or in the interests of public safety, or necessary for the functioning of the juvenile court system.

■ The juvenile court heard neither testimony nor oral argument. Ordinarily, an appellate court's review is limited to examination of the record before the lower court. However, an appellate court has the inherent power to look beyond the lower court record "where the orderly administration of justice commends it." *Crystal Beach Bay Assn. v. Koochiching County*, 309 Minn. 52, 57, 243 N.W.2d 40, 43 (1976). This court has an expanded record before it, one neither objected to by appellant nor challenged for its accuracy. The expanded record consists of scholarly literature on the harmful effects and dangers of sexual abuse. The orderly administration of justice will be served by our consideration of this literature in our review. We have thoroughly reviewed the record. We find that the disclosure of the juveniles' names, with court-imposed safeguards protecting the juveniles' privacy, would be in the best interests of the juveniles, the interests of public safety, maintain the integrity of the juvenile court, and facilitate a full investigation of the activities of Wey.

In reaching this decision, this court recognizes the strong interests which mitigate both for disclosure and against it. This court recognizes that the state has strong interests in keeping juvenile records confidential. The abrogation of confidentiality could cause embarrassment to the juvenile. It could weaken the rehabilitative force of the juvenile system by removing incentives to keep out of trouble. *State v. Schilling*, 270 N.W.2d 769, 772 (Minn.1978). However, it has also been recognized that there is no constitutional right of privacy which is violated by disclosure of juvenile court records. *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir.1981).

This court also recognizes the important distinction between the limited disclosure of a juvenile's name and address versus the disclosure of the juvenile's record and past activities leading up to an adjudication of delinquency. The degree of abrogation of confidentiality and potential harm is minimized if only the juvenile's name and address are disclosed, rather than the acts of delinquency committed by the juvenile. Many of respondent's arguments are persuasive when directed at preventing the disclosure of the juvenile's record, but lose their persuasiveness when directed at the limited disclosure of the juvenile's name and address.

Appellants have presented persuasive arguments that limited disclosure of the juveniles' names for a limited purpose would be in the best interests of the juveniles. A sexually-exploited juvenile may suffer long-term psychological and emotional injury. S. Sgroi, F. Porter, and L. Blick, *Validation of Child Sexual Abuse* in *Handbook of Clinical Intervention in Child Sexual Abuse* at 40–48 (S. Sgroi ed. 1982). Scholarly literature indicates that in many instances sexual abuse is not disclosed. S. Sgroi, F. Porter, and L. Blick, *A Conceptual Framework for Child Sexual Abuse* in *Handbook of Clinical Intervention in Child Sexual Abuse,* at 15–17 (S. Sgroi ed. 1982). Nondisclosure means an absence of therapeutic intervention, which experts believe is essential for recovery. F. Porter, L. Blick, and S. Sgroi, *Treatment of the Sexually Abused Child,* in *Handbook of Clinical Intervention in Child Sexual Abuse* (S. Sgroi ed. 1982). If as the result of this limited investigation an abused juvenile should come forward, the juvenile could receive information about the availability and utility of treatment for sex abuse. The juvenile could learn that fault for any misconduct lies not with him or her, but with the adult in a position of authority over that child. The juvenile would have the opportunity to come forward with information concealed due to embarrassment, shame, or fear of reprisal.

The criminal complaint against Wey also alleges Wey provided juveniles with alcoholic beverages. The complaint alleges E.H. was provided alcoholic beverages even though Wey knew E.H. had received extensive treatment for alcohol abuse. To prevent authorities from having an opportunity to conduct an investigation into the harms other juveniles may have incurred under Wey's supervision would not be in the interests of justice, and would be contrary to the juveniles' best interest.

There can be no question that limited disclosure of the juveniles' names and addresses to specified entities, with an accompanying limited investigation, would be in the best interests of public safety. According to the facts alleged in the complaint, Wey's abusive behavior did not occur in one isolated incident. The complaint alleges Wey engaged in sexual contact with two juvenile probationers under age 16, and that three others were put through similar experiences which led up to the actual contact and penetration with the first two. The alleged facts suggest a recidivist pattern. Public safety warrants a limited investigation covering other potential juvenile victims.

It is also evident that limited disclosure of the juveniles' names and addresses is necessary to maintain the integrity of the McLeod County Juvenile Court. The criminal complaint alleges some of the juveniles under the jurisdiction of the juvenile court have been abused by an agent of the court

acting in his official capacity. The possibility that other juveniles under the court's jurisdiction may also have been harmed by an agent of the court warrants further investigation. The juvenile court should cooperate and assist in determining the extent of the harm some of its probationers may have incurred.

The appellants have shown the limited disclosure of the requested juveniles' names and addresses would be in the best interests of the juveniles, the public safety, and the integrity and functioning of the juvenile court. Any one of these requirements is sufficient to support a court order for disclosure under Minn.Juv.C.R. 34.-02(3)(B). The interest in confidentiality must yield to the interests in the protection of the juvenile, public safety, maintaining the integrity of the juvenile court, and conducting a full criminal investigation.

This court is sensitive to the right of the juveniles to have their privacy respected and to the state's interest in confidentiality. The court is also sensitive to the juvenile court's potential administrative problems in handling appellants' requests. This court might have remanded this matter to the juvenile court for further proceedings. By so doing, that court could have fashioned its own supervisory method for disclosure of the names and addresses of juveniles who had been under Wey's supervision. However, counsel for appellants and respondent agreed that such remand was not necessary. The urgency of the present matter also persuades us to take immediate action. For these reasons, the Court orders the relief as set forth below.

### DECISION

1. The McLeod County Juvenile Court's order denying appellants' petition for disclosure of the names and addresses of the juveniles formerly under former Probation Officer Edward Wey's supervision is reversed.

2. We order that, within 20 days after receipt of this order, the McLeod County Juvenile Court or an appropriate person designated by that court shall ascertain the names and addresses of the juveniles under former Probation Officer Edward Wey's supervision from October 6, 1980, through May 1983.

3. After ascertaining the names and addresses of those juveniles set forth in paragraph 2 above, the McLeod County Juvenile Court shall forthwith send to each juvenile a letter inquiring whether that juvenile has knowledge of any sexual abuse or other inappropriate behavior committed by Edward Wey while he was in a supervisory position over that juvenile. The letter shall clearly advise each juvenile that cooperation with the investigation is voluntary. The letter shall state a mailing address or phone number which may be used by the juvenile if he or she wishes to provide information relevant to the investigation. If the juvenile responds to the letter and expresses a willingness to provide information, an interview may be scheduled. A separate letter shall be mailed to each juvenile's parent or guardian informing them of the investigation and procedures.

4. Within a reasonable time after mailing of those letters described in paragraph 3 above, the juvenile court or an appropriate person designated by that court may make one follow-up phone call to each juvenile who has not responded to the letter, and inquire if the juvenile would be willing to share information he or she might have regarding the investigation being conducted by petitioners. If the juvenile does wish to share information, an interview may be arranged. If the juvenile does not have any information concerning the investigation or declines to share information, all contact with that juvenile shall cease. No juvenile shall be forced to participate in any manner or in any proceeding against his or her will.

5. If an interview is arranged by agreement between the juvenile and the McLeod County Juvenile Court, or an appropriate person designated by that court, a representative from the McLeod County Sheriff's Office or the Minnesota Attorney General's Office may attend and participate in

the interview. Before any interview, the juvenile shall be instructed as to his or her right to counsel.

6. If the interview reveals the juvenile has been abused or victimized, the juvenile shall be informed by the McLeod County Juvenile Court, or by an appropriate person designated by that court, of available social services. The court or designated person shall give strong encouragement to that juvenile to seek counseling.

7. Inasmuch as the investigation being conducted by petitioners is one to determine whether Edward Wey engaged in any improper conduct which abused or victimized a juvenile under his probationary supervision, and is not intended to gather evidence to be used against a juvenile in any proceeding, no information obtained by petitioner as a result of interviewing a juvenile may be used in any manner against that juvenile.

8. If within twenty days of receipt of this order the McLeod County Juvenile Court determines that it does not wish to initiate those procedures set forth in paragraphs 1 through 6 above, it shall forthwith (but in no event later than twenty days after receipt of this order) notify the Sheriff's Office of McLeod County and the Minnesota Attorney General's Office of that decision. Upon such notification, the McLeod County Sheriff's Department and the Minnesota Attorney General's Office may then initiate those procedures set forth in paragraphs 1 through 6 above.

9. This order is intended to permit limited release of only the names and addresses of juveniles, and those only to the limited extent specifically described in this order. There shall be no release of any other information contained in any juvenile court file, nor shall the names and addresses of juveniles be released to any entity or used for any purpose other than these limited entities and limited purposes hereinbefore set forth.

Reversed.