521 N.W.2d 889 (1994)
In the Matter of the Welfare of A.N.J.
No. C4-94-691.
Court of Appeals of Minnesota.
September 27, 1994.
Review Denied November 29, 1994.
Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Linda K. Jenny, Asst. County Atty., Minneapolis, for respondent.
William R. Kennedy, Hennepin Co. Public Defender, Peter W. Gorman, Asst. Public Defender, Minneapolis, for appellant.
Considered and decided by FORSBERG, P.J., and NORTON and HARTEN, JJ.

OPINION
NORTON, Judge.
This appeal is from the juvenile court's order referring a 19-year-old individual *890 for prosecution in adult court. Appellant argues that the juvenile court lacked jurisdiction to determine the state's adult reference motion because the state filed the motion after his 19th birthday. He also contends that the evidence and the law do not support the court's reference order. We disagree and affirm.

FACTS
On June 28, 1993, a juvenile female complained to police that while she was taking a shower behind a locked bathroom door in July of 1991, appellant (A.N.J.), who was staying at her home, unlocked the door from the outside, entered the bathroom while naked himself, grabbed her, and forced her to have sexual intercourse with him. On October 23, 1993, the police referred this case to the county attorney's office for prosecution. On January 24, 1994, the county attorney's office filed a petition in juvenile court charging A.N.J. with one count of third degree criminal sexual conduct for engaging "in sexual penetration with another person * * * [when] the actor uses force or coercion to accomplish the penetration." Minn.Stat. § 609.344, subd. 1(c) (1992).
On January 26, 1994, A.N.J. turned 19 years of age. On February 14, 1994, the state filed a motion in juvenile court for adult reference. A.N.J. moved the juvenile court to dismiss the juvenile petition and the state's motion for adult reference on the grounds that the state lacked jurisdiction by virtue of his age. The juvenile court denied appellant's motion to dismiss, held a hearing on the reference matter, and granted the state's motion for adult reference. This appeal followed.

ISSUES
1. Does the juvenile court have jurisdiction to preside over an adult reference proceeding where the state filed a delinquency petition prior to appellant's 19th birthday and filed a motion for adult reference shortly after appellant reached age 19?
2. Do the record and law support the juvenile court's findings and order for adult reference?

ANALYSIS

1. Jurisdiction over Reference Hearing
This court has previously determined that the juvenile court retains jurisdiction after an individual's 19th birthday to "complet[e] an adjudication on the allegations of delinquency" brought prior to an individual becoming 19 years old. In re Welfare of C.A.N., 370 N.W.2d 438, 442-43 (Minn.App.1985). Thus, A.N.J. concedes that the juvenile court has jurisdiction to proceed on the delinquency petition filed prior to his 19th birthday. He contends, however, that the juvenile court does not have jurisdiction to refer him for prosecution in adult court because the state filed its motion for adult reference after his 19th birthday. We disagree.
The statute provides for juvenile court jurisdiction to continue "until the individual becomes 19 years of age." Minn.Stat. § 260.181, subd. 4. (1992). "[J]uvenile court jurisdiction has not been recognized after the time period provided in section 260.181." C.A.N., 370 N.W.2d at 442. Thus, if A.N.J. is not referred to adult court, the juvenile court will only be able to hold a trial and adjudicate him delinquent; the court will not have the power to impose a disposition or any consequences other than to create a court record which "would increase the severity of sentences for future offenses." Id. at 443. Considering the severity of the offense here, and the presumptive prison term which accompanies a conviction for this offense in adult court, a juvenile adjudication here with no treatment or other disposition would amount to little more than a "slap on the wrist." A.N.J.'s argument that he may only be adjudicated delinquent with no dispositional consequence is one more twist to the "home free" arguments which arise when a person exceeds the jurisdictional age specified in the juvenile code. Minnesota appellate courts have repeatedly found that a "home free" claim based upon age alone must fail. See In re Welfare of S.V., 296 N.W.2d 404, 407 (Minn.1980); State v. Dehler, 257 Minn. 549, 555-56, 102 N.W.2d 696, 702 (1960); C.A.N., 370 N.W.2d at 442.
*891 This court has previously addressed a jurisdictional issue similar to the one presented here. See C.A.N., 370 N.W.2d at 440. A.N.J. argues that C.A.N. compels a conclusion that the juvenile court lacked jurisdiction here to preside over his reference hearing and refer him after he turned age 19. We disagree.
Similar to A.N.J., C.A.N. was age 18 when the delinquency petition was filed, and she had turned 19 before the juvenile court referred her to adult court for prosecution. Id. Unlike A.N.J., however, the juvenile court referred C.A.N. without a reference hearing. Id. This court reversed that order in a two-part analysis.
First, the C.A.N. court addressed the issue of whether the juvenile court could refer a juvenile to adult court without a reference hearing once the juvenile reached age 19. Id. at 440. After a detailed review of the various applicable statutes and case law, this court determined that the "least absurd result among several unsatisfactory options" was to provide juvenile court jurisdiction to complete an adjudication that had been commenced prior to the juvenile turning age 19. Id. at 442. Significantly, this court noted that "[i]n appropriate cases, this form of continued jurisdiction would involve a reference hearing and reference to adult court." Id. at 443.
Second, the C.A.N court considered whether there could be a reference hearing on remand. The problem in C.A.N., however, was that a reference hearing had not been scheduled within 30 days after the state initially filed its motion for reference. Id. at 440. Further, the juvenile court had issued its order for reference after the thirty-day period. Id. at 440, 443-44. This court determined that "the statutory condition on time for a hearing is obligatory on its face," and held that there could be no reference hearing in C.A.N. because the thirty-day time had been exceeded and no hearing had been scheduled. Id. at 443 (citing Minn.Stat. § 260.125, subd. 2 (1984)).
Here a reference hearing occurred within 30 days of the filing of the reference motion. Thus, the obstacles to adult reference contained in C.A.N. are not present here and the juvenile court had jurisdiction to refer A.N.J. We are not swayed by A.N.J.'s argument that the filing of the motion for reference after his 19th birthday resulted in the juvenile court losing jurisdiction to refer him.
Where, as here, the evidence supports the court's finding that "[t]he delay between the date the investigation in this matter began and the date that the petition herein was filed was not the result of any improper state purpose," it is consistent with prior decisions of this court and the supreme court to determine that the juvenile court had jurisdiction to refer A.N.J. to adult court for prosecution. Cf. S.V., 296 N.W.2d at 408 (where the juvenile court lacked jurisdiction to refer the individual who was older than the jurisdictional age provided in the juvenile code, and where the state had been diligent in seeking prosecution of an offense which occurred when individual was under age 18, the state could seek prosecution directly in adult court without denying the individual his right to a speedy trial); C.A.N., 370 N.W.2d at 441-42 ("adult prosecution without statutory reference cannot occur, where a suspect person was under 18 when an alleged offense was committed, and where there was ample time before the individual turns 19 to conduct reference proceedings"). Here, the petition was filed only two days prior to A.N.J.'s 19th birthday; there was no time to hold a reference hearing before he became 19. The bulk of the delay in filing the petition here resulted because the victim did not report the offense until two years after its occurrence. The police investigation took four months and then the Hennepin County Attorney's Office filed the petition three months after receiving the police report. We see no inherent lack of diligence on behalf of the state here; no evidence in the record demonstrates anything to the contrary.
Finally, both parties have referred to a special term order in which this court denied a petition for writ of prohibition to prevent the juvenile court from proceeding on three delinquency petitions that had been served *892 after the petitioner's 19th birthday. While that special term order certainly supports our decision here, it is not precedential. See State v. Russell, 481 N.W.2d 148, 150 (Minn. App.1992). (unpublished special term orders have no precedential value and "should not be cited as precedent on another case in this court or in the trial court").

2. Reference.
Where, as here, the case involves a first offense, the juvenile court has the discretion to refer an individual to the adult court if it finds that:
(1) there is probable cause, as defined by the rules of criminal procedure promulgated pursuant to section 480.059, to believe the child committed the offense alleged by delinquency petition and
(2) the prosecuting authority has demonstrated by clear and convincing evidence that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts.
Minn.Stat. § 260.125, subd. 2(d) (1992). The state may also prove its case for reference with an offense that establishes a prima facie case under Minn.Stat. § 260.125, subd. 3.
The state moved for adult reference of A.N.J. under only Minn.Stat. § 260.125, subd. 2, and the juvenile court based its reference order on the grounds provided therein.[1] In deciding the propriety of an adult reference pursuant to Minn.Stat. § 260.125, subd. 2, the juvenile court
shall consider the totality of the circumstances. This totality of the circumstances may include but is not limited to:
(a) the seriousness of the offense in terms of community protection,
(b) the circumstances surrounding the offense,
(c) whether the offense was committed in an aggressive, violent, premeditated or willful manner,
(d) whether the offense was directed against persons or property, the greater weight being given to an offense against persons, especially if personal injury resulted,
(e) the reasonably foreseeable consequences of the act,
(f) the absence of adequate protective and security facilities available to the juvenile treatment system,
(g) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living,
(h) the record and previous history of the child,
(i) whether the child acted with particular cruelty or disregard for the life or safety of another,
(j) whether the offense involved a high degree of sophistication or planning by the child, and
(k) whether there is sufficient time available before the child reaches age nineteen (19) to provide appropriate treatment and control.
Minn.R.Juv.P. 32.05, subd. 2 (emphasis added).
This court will not reverse a juvenile reference order unless the juvenile court's findings are "clearly erroneous so as to constitute an abuse of discretion." In re Welfare of J.L.B., 435 N.W.2d 595, 598 (Minn. App.1989), pet. for rev. denied (Minn. Mar. 17, 1989). The juvenile court "has broad discretion in determining whether a juvenile is suitable for treatment in the juvenile system." In re Welfare of K.J.K., 357 N.W.2d 117, 119 (Minn.App.1984).
Based upon the face of the delinquency petition and the probable cause statement contained therein, the juvenile court found that the evidence indicated that:

*893 [A.N.J.] was staying in the victim's home at the time the alleged offense occurred; that the victim was taking a shower behind a locked bathroom door when [A.N.J.] was able to unlock the door from the outside and enter the bathroom while naked himself; and, that he grabbed the victim and made her submit to vaginal penetration with his penis.
The court also found that A.N.J. was not "eligible for admission into any juvenile treatment or correctional program or facility known to the Hennepin County District Court  Juvenile Division because he is past his 19th birthday."[2] As the court also noted, A.N.J. presented no evidence in the reference hearing. The court then concluded:
1. There is clear and convincing evidence on the face of the petition which includes a probable cause statement to show that [A.N.J.] committed the offense of Criminal Sexual Conduct in the Third Degree in violation of Minn.Stat. 609.344, Subd. 1(c) as charged on the petition.
2. Based upon the evidence contained in the record herein, it is fair and reasonable to require [A.N.J.] to stand trial on the petition.
3. The offense alleged in the petition: raises serious issues of public safety; was committed in an aggressive, premeditated and willful manner; and was directed against a person.
4. The evidence is clear and the Court is convinced that [A.N.J.] is not suitable for treatment under the provisions of the laws relating to juvenile courts.
5. The evidence is clear and the Court is convinced that the public safety is not served under the provisions of the laws relating to juvenile courts.
A.N.J. contends that the delinquency petition, the probable cause statement contained therein, and the fact that he is not treatable within the juvenile system because he is 19 is, as a matter of law, an insufficient amount of evidence to support an adult reference. We disagree. The alleged offense is presumed to be true for purposes of a reference hearing. In re Welfare of W.J.R., 264 N.W.2d 391, 393 (Minn.1978). Here, the alleged offense is sexual penetration accomplished with the use of "force or coercion." Minn.Stat. § 609.344, subd. 1(c) (1992). The elements of the offense alone, along with A.N.J.'s age, support the juvenile court's findings that the charged offense was serious, raised issues of public protection, was directed against a person, and that no treatment was available to A.N.J. through the juvenile court. See Minn.R.Juv.Cts. 32.05, subd. 2(a)(d), (e), (f), (i), (k). In addition, the probable cause statement based upon the victim's complaint shows that A.N.J committed the offense in an aggressive and premeditated manner while he was staying at the victim's home. See id., subd. 2(b), (c), (j). These facts support the juvenile court's order for reference.
The cases A.N.J. cites are distinguishable. None of the cases involve a situation where, *894 as here, the accused has already reached age 19 and the juvenile court lacks jurisdiction to order any disposition. See In re Welfare of M.R.G., 432 N.W.2d 771, 773 (Minn.App. 1988) (conflicting testimony regarding 18-year-old M.R.G.'s amenability to treatment); In re Welfare of R.D.W., 407 N.W.2d 113, 117 (Minn.App.1987) (evidence did not support finding R.D.W. was not amenable to treatment; at time juvenile court issued its reference order, state still had time to obtain a chemical dependency evaluation and determine if treatment was needed), pet. for rev. denied (Minn. July 15, 1987). Further, the offenses in those cases were significantly less severe than the alleged offense here and did not involve the same need for community protection. Cf. M.R.G., 432 N.W.2d at 772 (setting fire to personal property); R.D.W., 407 N.W.2d at 117 (sale of approximately two ounces of marijuana); Minn.Sent.Guidelines § IV (presumptive stay of sentence for either third degree arson or sale of controlled substance). In adult court, the offense for which A.N.J. has been charged carries a presumptive prison sentence of 48 months for a first time offender. See Minn.Sent.Guidelines § IV. This presumption of incarceration for an offense committed against a person weighs heavily in favor of finding that the public safety is not served by A.N.J. remaining in a juvenile system that cannot order him to any treatment and/or detention. Furthermore, the offense A.N.J. allegedly committed is an aggravated felony which, by itself, could have established a prima facie case for reference. See Minn.Stat. § 260.125, subd. 3.
Finally, A.N.J. contends that the juvenile court cannot refer him based upon a finding that he is not amenable to treatment unless there is a psychological report showing a need for treatment or a history of misconduct. Under the circumstances presented here, we cannot agree. We acknowledge that in R.D.W. we stated that the determination that an accused is not amenable for treatment "must be based upon psychological data or a history of misconduct as well as the juvenile's age, level of maturity, and the seriousness of the offense." R.D.W., 407 N.W.2d at 117; see also In re Welfare of Dahl, 278 N.W.2d 316, 320 (Minn.1979) (remanded case for consideration of all reference factors, including psychological evaluation).[3] In this case, however, it was A.N.J. who opposed the state's request to obtain psychological data. Cf. Dahl, 278 N.W.2d at 319 (psychological evaluation never occurred despite juvenile's request for it). When the state requested an enlargement of the 30-day time limit to schedule the reference hearing in order to obtain a psychological evaluation and probation evaluation, A.N.J.'s attorney objected, stating:
given my client's age the request by the County Attorney is nonsensical. * * * There is no reason [to expand the time to complete the reference report]. Of course my client is going to be referenced. The Court has no jurisdiction. The Court cannot treat my client.
Appearing to be influenced by this argument, the juvenile court then found that no good cause existed to delay the reference hearing. We agree.
Because of the severity of the offense and the threat to the public if A.N.J. goes unpunished and untreated, we believe that the juvenile court did not abuse its discretion in referring A.N.J. to adult court for prosecution. Any prejudice resulting from the lack of psychological data should be borne by A.N.J. since he caused its absence.

DECISION
The juvenile court had jurisdiction to refer A.N.J. to adult court. Given the severity and nature of A.N.J.'s offense and the fact that A.N.J. was age 19 and thus not amenable to treatment or detention by juvenile court order, the juvenile court did not abuse its discretion in referring A.N.J. for adult prosecution.
Affirmed.
NOTES
[1] A.N.J. argues that the state incorrectly claims in its brief that it had shown an "unrebutted prima facie case for adult reference." At oral argument, the state noted its oversight and offered an analysis under the relevant statutory provision.
[2] There is no merit to A.N.J.'s argument that the juvenile court impermissibly took "judicial notice" of his age and the fact that he was not eligible for any juvenile court rehabilitative services because of his age. We agree with the state's claim that it is absurd for A.N.J. now, for the first time on appeal, to object to so-called "judicial notice" and the findings based thereon. A.N.J. relied on and argued these same facts at the hearings before the juvenile court. The court record contains the petition which alleges that A.N.J.'s birthday is January 26, 1975. A.N.J. did not claim that the birth date on the petition was erroneous, nor does he do so on appeal. A.N.J.'s attorney extensively argued below that the juvenile court did not have jurisdiction over A.N.J. because of his age. Among many other comments, she stated: "[it] is indisputable * * * that the Court would have no dispositional power once my client turned 19." Finally, the statute and case law provide a basis for the court's determination that, as a matter of law, the juvenile court cannot make or continue a dispositional order related to an individual, such as A.N.J., who is 19 or older. Minn.Stat. § 260.181, subd. 4 ("the jurisdiction of the court shall continue until the individual becomes 19 years of age if the court determines it is in the best interest of the individual to do so"); see J.L.B., 435 N.W.2d at 600 (juvenile who was 18 years and 4 months old at time of reference hearing "could not be successfully treated within the time remaining before the juvenile court's jurisdiction is terminated").
[3] We note that R.D.W. and Dahl involved alleged offenders who had not yet reached the age where the juvenile court was divested of jurisdiction. In contrast, the juvenile court here had lost jurisdiction to treat A.N.J. because he was 19 at the time of the reference hearing.